IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| VIVOS ACQUISITIONS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:19-cv-1606 (RDA/TCB) |
| v. ) | |
| ) | |
| HEALTH CARE RESOURCE NETWORK, ) | |
| LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Health Care Resource Network, LLC ("HCRN"), Laura Bankeroff, and Joann Koutsioukis's ("Defendants") Motion for Summary Judgment ("Motion"). Dkt. 68. Considering the Motion together with Defendants' Memorandum in Support (Dkt. 68-1), Plaintiff Vivos Acquisitions, LLC's ("Plaintiff" or "Vivos") Opposition (Dkt. 73), and Defendants' Reply (Dkt. 74), it is hereby ORDERED that Defendants' Motion is GRANTED IN PART and DENIED IN PART.

I. BACKGROUND

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendants, pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56, set forth a statement of material facts that they contend are undisputed. In response, Plaintiff disputed certain facts and asserts that other undisputed facts are immaterial. Accordingly, the following statement of undisputed material facts is derived from a review of the Defendants' statement of undisputed facts, Plaintiff's response, Plaintiff's admissions, and the record.

Plaintiff Vivos was formed on January 11, 2017 as a Virginia limited liability company. Dkt 68-1. Individuals known as N. Doki and Valleru were the members. *Id.* Vivos lost its active corporate status and its limited liability company charter was automatically cancelled as of April 30, 2020 for failure to pay state registration fees, although this appears to have been temporary. Dkt. 68-3.

Defendant Health Care Resource Network ("HCRN") is a Nevada LLC with a principal place of business in Montgomery County, Maryland. Dkt. 68-4. Prior to February 10, 2017, Bankeroff and Koutsioukis owned 51 and 49 percent, respectively, of its Membership Interests. They sold the Membership Interests to Vivos for $8,580,000.00 million pursuant to a Membership Interest and Purchase Agreement ("Membership Interest Agreement"). Dkt. 68-5. Of this amount, $4,280,000.00 was supposed to be deferred and paid to them pursuant to Promissory Notes and Supplemental Promissory Notes (the "Notes"). In the documents finalized on the funding date, February 16, 2017, the Bankeroff Notes added up to $2,182,800.00 and the Koutsioukis Notes added up to $2,097,200.00. Dkt. 68-6 ¶ 2; *see also* Dkt. Nos. 68-12; 68-13; 68-14; 68-15.

Vivos funded the transaction with $3,452,667.00 borrowed from a factoring company known as "Triumph"—Advance Business Capital LLC d/b/a Triumph Business Capital. Vivos did so by using HCRN's accounts receivable as security for the money, plus $700,000.00 from a "Vivos Acquisitions Loan" and $183,873.00 from HCRN's own operating accounts at SunTrust Bank. *See* Dkt. 68-7.

Vivos's director of mergers and acquisitions was "Suresh Venkat D," who is N. Doki's brother and is also known as Suresh Venkat Doki ("S. Doki"). S. Doki wrote to Bankeroff that "183,873 is to be drawn from SunTrust account of HCRN which is the cash on balance sheet. 200K is coming from one of the owners and she just told me that she wired from 2 of her other

companies for 100K each . . . ". Dkt. 68-10. When using HCRN funds, payment became an issue, S. Doki wrote to his chief financial officer, John Warren: "We expect all fees to come out of the target company. As you very well know, we dont [sic] have funds at Lionshead or Vivos to cover for closing costs." Dkt. 68-11. In Warren's message, "Lionshead" refers to a now-inactive Virginia corporation that was registered at the same address as Vivos and also listed N. Doki as its president. *See* Dkt. 68-1 at 4 n.1.

On specified dates beginning on April 1, 2017, Vivos owed Bankeroff $42,563.48 and Koutsioukis $40,894.32 under the original Note. Dkt. Nos. 68-12 at 1; 68-13 at 1; 68-14 at 1; Dkt. 68-15 at 1. And under the supplemental Note, Vivos owed Bankeroff an additional $5,797.22 and Koutsioukis an additional $5,569.87. *Id.* The Notes set out certain provisions regarding potential default by Vivos, stating that the company "without notice or demand of any kind, shall be in default" for reasons that included:

> (b) Insolvency or bankruptcy of [Vivos], or the making by [Vivos] of an assignment for the benefit of creditors … or
> (c) [Vivos] fails to make payments when required hereunder and such failure continues uncured for more than five (5) days after written notice from Holder[, or]
> (d) [Vivos] shall be in default or breach of any of the terms and provisions of the Purchase Agreement between [Vivos] and Holder."

Dkt. Nos. 68-12 at 1-2; Dkt. 68-13 at 1-2; 68-14 at 1-2; 68-15 at 1-2.

Vivos secured the Promissory Notes by pledging the HCRN Membership Interests in HCRN, pursuant to a Membership Interest Pledge and Security Agreement. Dkt. 68-16. Vivos, the "Pledgor," pledged its "Membership Interests purchased to [Koutsioukis and Bankeroff] Pledgees as security for payment of the Seller Notes and full satisfaction of the Obligations." *Id.* The Obligations were defined in the Membership Interest Pledge and Security Agreement as the "purchase price of Eight million Five Hundred Eighty Thousand and 00/100 Dollars $8,580,000.00, with the sum of Four Million, Eighty Thousand and 00/1200 Dollars

3

($4,080,000.00), to be deferred and paid pursuant to the Seller Notes, as such term is defined in the Purchase Agreement." *Id.* Vivos also charged HCRN with two fees: (1) a $25,000.00 monthly fee to LionsHead Enterprises Corp., and (2) $171,600.00 in "acquisition fees" to Federal Systems, LLC. Dkt. 68-18. Vivos alleges that Bankeroff and Koutsioukis were aware of and did not object to those fees. Dkt. 73 at 14-15.

Prior to the closing, S. Doki persuaded Bankeroff and Koutsioukis to approve borrowing funds for the purchase from Triumph. N. Doki and Valleru participated in these transactions. The agreement dated February 1, 2017, provided that Triumph would lend up to $6 million dollars. Dkt. 68-21. Vivos used Triumph funds, which were secured by HCRN's accounts receivable, for most of its initial payment to Bankeroff and Koutsioukis. The record reflects that Bankeroff sent letters to N. Doki and Valleru alleging tardy note payments by Vivos in April, June, and July of 2017. *See* Dkt. 68-23 at 3; 68-24 at 3. These letters advised that payments were required within five days to avoid a default. *Id.*

By August of 2018, Bankeroff and Koutsioukis decided they would no longer permit Vivos to make payments under the Notes with funds drawn from HCRN's account. The parties dispute the reasons for Bankeroff and Koutsioukis's August 2018 decision not to accept any further Notes payments from HCRN funds after having accepted payments using those funds up until that time.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate only if the record shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 615 (E.D. Va. 2014) (quoting Fed. R. Civ. P. 56(a)). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such

4

that a reasonable jury could return a verdict for the non-moving party.'" *Hantz*, 11 F. Supp. 3d at 615-16 (quoting *Spriggs v. Diamond Auto. Glass*, 242 F.3d 179, 183 (4th Cir. 2001)). The moving party bears the "initial burden to show the absence of a material fact." *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

On summary judgment, a court reviews the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 570 (4th Cir. 2015) (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)); *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). This is a "fundamental principle" that guides a court as it determines whether a genuine dispute of material fact within the meaning of Rule 56 exists. *Jacobs*, 780 F.3d at 570. "[A]t the summary judgment stage[,] the [Court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A factual dispute alone is not enough to preclude summary judgment. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. A "material fact" is one that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). The substantive law determines whether a fact is considered "material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-*

5

*Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).  A "genuine" issue concerning a "material fact" arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor.  *Anderson*, 477 U.S. at 248.

### III. ANALYSIS

The Court dismissed certain claims in Plaintiff's Amended Complaint, *see* Dkt. 66, but nine claims remain in this litigation.  Eight are affirmative claims brought by Plaintiff against Defendants, and one is a counterclaim brought by Defendants against Plaintiff.  The Court addresses each of these surviving claims below.

#### A. Breach of Contract Claims

There are two breach of contract claims at issue on consideration of summary judgment.  The first is Plaintiff's breach of contract claim asserted against Defendants, and the second is Defendants' counterclaim for breach of contract asserted against Plaintiff.  Each claim is assessed in turn.

##### 1. Plaintiff's Breach of Contract Claim (Count II)

Plaintiff alleges that Defendants breached their contract when Defendants Bankeroff and Koutsioukis terminated Plaintiff's ownership of the HCRN Membership Interests.  In response, Defendants counter that there is no breach because they properly declared defaults when Plaintiff became insolvent and violated the Pledge Agreement.

Under Virginia law, a breach of contract claim requires (1) a legally enforceable obligation of a defendant to a plaintiff; (2) breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.  *Filak v. George*, 267 Va. 612, 619 (2004).  "When a contract is clear and unambiguous, it is the court's duty to interpret the contract[] as written."  *Palmer & Palmer Co., LLC v. Waterfront Marine Constr., Inc.*, 276 Va. 285, 289 (2008) (citation omitted).

To determine whether Defendants breached their contractual obligations, the Court first looks to the circumstances surrounding Defendants' declarations of default. Default was a contingency the parties contemplated in their Notes. The Notes afforded Bankeroff and Koutsioukis the right to declare a default in the event Plaintiff became insolvent. Specifically, the Notes stated that Defendants Bankeroff and Koutsioukis "without notice or demand of any kind, shall be in default . . . hereunder if any of the following events occurs: . . . (b) Insolvency or bankruptcy of [Plaintiff] . . . .". Dkt. 68-12 at 1-2.

Plaintiff contends that its purported insolvency is a disputed factual question that cannot be resolved on summary judgment. Based on Plaintiff's financial condition in August and September of 2018, and its apparent lack of any other assets besides its highly-leveraged subsidiaries, Defendants argue that Plaintiff was insolvent within the meaning of that term at the time it alleges Defendants breached their contract.

The parties do not appear to have agreed on a fixed definition of the term "insolvency" in any of their agreements. A few potential meanings are worth noting, however. Under the Uniform Commercial Code as adopted in Virginia, Virginia Code § 8.1A-201(b)(23), "insolvent" is defined as (A) having generally ceased to pay debts in the ordinary course of business other than as a result of bona fide dispute; (B) being unable to pay debts as they become due; or (C) being insolvent within the meaning of federal bankruptcy law. In addition, the 'balance sheet' test for determining insolvency holds that "the debtor is insolvent only when the sum of all the debtor's liabilities is greater than the sum of all its assets, at a fair valuation." *In re Heilig-Meyers Co.*, 328 B.R. 471, 477 (E.D. Va. 2005).

Insolvency questions are on occasion so clear-cut that they are capable of resolution on summary judgment. This is not often the case, however, and it is not the case here. "[I]nsolvency

7

tends to be a fact-specific question, appropriate for a jury to decide." *In re Worldcom, Inc.*, 357 B.R. 223, 230 (S.D.N.Y. 2006). Because there are genuine disputes of material fact regarding the alleged insolvency of Plaintiff on August 1, 2018, it is appropriate for the factfinder to resolve that question, likely with the aid of expert testimony. *See, e.g.*, *In re Transit Grp., Inc.*, 332 B.R. 45, 55 (Bankr. M.D. Fla. 2005) (stating that "issues relating to solvency generally are not susceptible to summary judgment because factual disputes usually exist, as they do here" and that "[m]ore evidence is required in order to determine [the entity's financial condition during the relevant time period"); *In re Enron Corp.*, 318 B.R. 655, 663 (Bankr. S.D. Tex. 2004) ("[T]he summary judgment evidence also establishes that there are genuine issues of material fact regarding the insolvency of Enron N.A. on the transfer dates under §§ 547, 548 and Texas law"); *In re Indus. Ceramics, Inc.*, 253 B.R. 323, 331 (Bankr. W.D.N.Y. 2000) ("[T]he Court is not prepared to make a finding of balance sheet insolvency without expert testimony."); *In re Suburban Motor Freight, Inc.*, 124 B.R. 984, 1005 (Bankr. S.D. Ohio 1990) (denying summary judgment on "the issue as to whether [a company's] assets exceeded its liabilities" because it was "a material fact in dispute").

Defendants also argue that their default declarations were further supported by Plaintiff's violation of the Pledge Agreement. That agreement contains several provisions that are relevant here. First, the Pledge Agreement states that Plaintiff "irrevocably pledges to [Bankeroff and Koutsioukis] the Membership Interests . . . and grants Pledgees a lien thereon and security interest therein." Second, the agreement states that "[t]o perfect said lien and security interest, [Bankeroff and Koutsioukis] are hereby given possession of the Certificated Pledged Interests until the Obligations are fully satisfied." And third, the Pledge Agreement restricted Plaintiff's rights with respect to the Membership Interests: "until the Obligations are satisfied in full, [Plaintiff] will not

8

sell, assign, hypothecate, convey or otherwise dispose of any Pledged Interests or interest therein, or create a lien, pledge or any encumbrance whatsoever upon the Pledged Interests or its proceeds."

Applying this third relevant provision to the facts at hand is dispositive. On the one hand, if the "Obligations" had already been "satisfied in full" when Defendants reclaimed their HCRN Membership Interests from Plaintiff, then Defendants plainly breached their agreement with Plaintiff by divesting Plaintiff of its interest in HCRN on August 7, 2018 after declaring default on August 1, 2018. If, on the other hand, those obligations had not been satisfied when Plaintiff encumbered Defendants' Pledged Interests, then Defendants were within their rights to declare defaults and Plaintiff cannot recover for breach of contract.

This Court finds that genuine issues of material fact remain on this question. The summary judgment record does not contain sufficient evidence to conclude that these obligations had been satisfied in full. Whether Defendants' taking of Plaintiff's interest in HCRN constituted complete satisfaction of any obligations owed by Plaintiff is purely a fact question that cannot be resolved on the present summary judgment record, as it depends, among other things, on whether Plaintiff was actually insolvent on August 1, 2018—which bears on whether Defendants' declarations of default were proper.

Although Plaintiff also argues that the doctrine of first material breach applies to its affirmative breach of contract claim against Defendants, that position misreads the law. Under this theory, Plaintiff would be excused from its contractual obligations because Defendants Bankeroff and Koutsioukis would have already breached the contract themselves. *See Countryside Orthopaedics, P.C. v. Peyton*, 261 Va. 142, 154 (2001) ("[W]hen the first breaching party commits a material breach, that party cannot enforce the contract."). But this is an affirmative defense, not an element of a contract breach claim. As this Court has noted, "the first material breach doctrine

9

operates not as remedy requested by a party in its capacity as a plaintiff, but as an affirmative defense pled by a party in its capacity as a defendant." *SunTrust Mortg., Inc. v. United Guar. Residential Ins. Co.*, 806 F. Supp. 2d 872, 887 (E.D. Va. 2011). Therefore, as a matter of law this doctrine is not available to Plaintiff in proving its case under Count II.

Additionally, Defendants argue that "[i]n assessing whether Bankeroff and Koutsioukis properly terminated Vivos's ownership of the HCRN Membership Interests, this Court is not limited to the grounds for default cited in August 2018." Their support for this principle is lifted from a line of cases beginning with *College Point Board Corp. v. United States*, 267 U.S. 12, 16 (1925), which states that a party seeking to avoid liability for not performing under a contract may do so "by proving that there was, at the time, an adequate cause, although it did not become known to him until later." In response, Plaintiff contends that Defendants' post-hoc rationales, even if justified, cannot serve as a valid basis to void an agreement. Defendants' citations to cases interpreting this principle, although well-taken, are exclusively out-of-circuit and sister-state authorities, and it is not clear whether Virginia law has adopted the doctrine of constructive termination or its equivalent. The Court will therefore not grant summary judgment on this ground.

Because the Court cannot resolve the question of Plaintiff's alleged insolvency on August 1, 2018 on summary judgment, it also cannot at this juncture determine whether Defendants breached an obligation owed to Plaintiff under Virginia contract law. *Filak*, 267 Va. at 619. Moreover, a genuine issue of material fact exists as to whether Defendants' obligations had been satisfied in full when they declared defaults on August 1, 2018, and ousted Plaintiff on August 7, 2018. Thus, because genuine issues of material fact remain with respect to Plaintiff's breach of contract claim, the Court denies summary judgment as to Count II of the Amended Complaint.

Case 1:19-cv-01606-RDA-TCB   Document 75   Filed 03/31/22   Page 11 of 18 PageID# 1972

### 2. Defendants' Breach of Contract Counterclaim

Defendants' counterclaim seeks the outstanding principal and interested owed by Plaintiff on the Notes, which they allege became due and payable as a result of Plaintiff's default. *See* Dkt. 74 at 18. In response, Plaintiff claims that its obligations were completely satisfied when Defendants reclaimed the HCRN Membership Interests. Plaintiff also invokes the first material breach doctrine as an affirmative defense. Finally, Plaintiff argues that it is entitled to a set-off against its interest in HCRN or recoupment of payments it made on the Notes, asserting that "Koutsioukis and Bankeroff received cash payment equal to millions of dollars in addition to the Seller Promissory Notes." Dkt. 73 at 27-28.

This counterclaim implicates similar factual questions regarding the complete satisfaction as those described above, and for the reasons discussed *supra*, summary judgment is therefore inappropriate on this claim. The Court notes, however, that unlike in Plaintiff's affirmative breach of contract claim, the affirmative defense of first material breach will remain available to Plaintiff in defending against Defendants' counterclaim in the ultimate disposition of this claim.

### B. Conversion (Count V)

In Count V of the Amended Complaint, Plaintiff alleges that Defendants are liable for the tort of conversion for their "removal of Plaintiff's membership interests in HCRN and ousting of Plaintiff from HCRN." Dkt. 11 ¶ 170. To establish conversion, which is "any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith.'" *Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659,663-64 n.9 (E.D. Va. 2001), a plaintiff must prove "(i) the ownership or right to possession of the property at the time of the conversion and (ii) the wrongful exercise of dominion or control by defendant over

the plaintiff's property, thus depriving plaintiff of possession." *Id.* at 664 (citing *Universal CIT Credit Corp. v. Kaplan*, 198 Va. 67, 75-76 (1956)).

The Court begins its analysis of Plaintiff's conversion claim with a background principle: losses incurred as a result of the breach of a duty that exists only by virtue of the parties' agreement, rather than a duty owed to the injured party by law, sound only in contract. *See, e.g.*, *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 205 (2007); *Tingler v. Graystone Homes, Inc.*, 298 Va. 63 (2019). Here, this means that Plaintiff cannot recover against Defendants on a theory of conversion that is predicated on losses suffered by any breach of a contractual obligation. To the extent Plaintiff's conversion claim seeks redress for injuries flowing from any such contractual breach, this theory is precluded as a matter of law.

Assuming that Plaintiff's conversion claim satisfies this rudimentary requirement, the Court looks to whether there is a genuine issue of material fact permitting this claim to proceed to trial. Under the Uniform Commercial Code of Virginia, upon default a secured party may "take possession of the collateral . . . if it proceeds without breach of the peace." Va. Code Ann. § 8.9A-609. Without force, threats, violence, or some other breach of the peace, a party holding a security interest that repossesses property due to nonpayment cannot establish a tort of conversion under Virginia law. *See Mahdavi v. NextGear Capital, Inc.*, No. 1:14-cv-648, 2015 WL 1526538, at *4 (E.D. Va. Apr. 3, 2015); *Rollins v. Drive-1 of Norfolk, Inc.*, No. 2:06-cv-375, 2006 WL 2519516, at *6 (E.D. Va. Aug. 29, 2006).[1] The summary judgment record contains no evidence of any such misconduct. As a result of Plaintiff's actions, Defendants availed themselves of contractual remedies and reclaimed their HCRN Membership Interests. Exercise of their contractual rights

---

[1] Maryland law, which governs the Pledge Agreement, follows a similar rule. *See* Md. Code Ann., Com. Law § 12-1021; *Davis v. Toyota Motor Credit Corp.*, 251 F. Supp. 925, 930 (D. Md. 2017).

did not involve the sort of breach of the peace that might give rise to a tort of conversion. Accordingly, Defendants are therefore entitled to summary judgment on Plaintiff's conversion claim.

### C. Tortious Interference with Plaintiff's prospective business or economic advantage or business expectancy (Counts VIII and XI)

Plaintiff also brings two tortious interference claims. In Count VIII of the Amended Complaint, Plaintiff alleges that Defendants interfered with "a business relationship or expectancy between [Plaintiff] as the sole member of HCRN and the U.S. government and various other third parties with reasonable probability of future economic benefit to Vivos." Dkt. 11 ¶ 190. And in Count XI of the Amended Complaint, Plaintiff provisionally alleges that if its control over the Membership Interests ceased to exist, Plaintiff "conferred a benefit upon Defendants Bankeroff and Koutsioukis when it purchased their membership interests in HCRN for $8,580,000," which "created a contract expectancy, of which Defendants were aware," and with which Bankeroff and Koutsioukis "intentionally and improperly interfered" by refusing to accept Plaintiff's payments and ousting Plaintiff. *Id.* ¶¶ 218-21. The Court addresses these claims in turn.

To prove a claim for tortious interference with a valid business expectancy in Virginia, a plaintiff must show:

> (1) [t]he existence of a valid business expectancy with a probability of a future economic profit; (2) [d]efendant's knowledge of the expectancy; (3) [a] reasonable certainty that absent the defendant's misconduct, the plaintiff would have realized the expectancy; and (4) [d]amage to the plaintiff.

*Integrated Direct Mktg., LLC v. May*, 129 F. Supp. 3d 336, 370 (E.D. Va. 2015) (citation omitted). Plaintiff's claim fails on summary judgment for three reasons. First, Plaintiff has failed to identify any specific government contract that Plaintiff expected to obtain or that HCRN was awarded during the relevant time period, thereby falling short of the requirement to establish "the existence

13

of a valid business expectancy." *Id.* Second, as Plaintiff admits, "under Virginia law, a party cannot interfere with his own contract." Dkt. 73 at 29 (citing *Fox v. Deese*, 234 Va. 412, 427 (1987)). Yet in August of 2018, Bankeroff and Koutsioukis both worked for HCRN, which was Plaintiff's wholly owned subsidiary; it is impossible, therefore, for Plaintiff to maintain that its own agents tortiously interfered with its own contract. Finally, Plaintiff has failed to establish the requisite "misconduct" by Bankeroff and Koutsioukis to maintain its claim. Without this essential element, Plaintiff cannot prevail on a tortious interference claim. For each of these independent reasons, summary judgment for Defendants is appropriate on Count VIII of the Amended Complaint.

Count XI of Plaintiff's Amended Complaint meets a similar fate. In this claim, Plaintiff asserts that it conferred a benefit on Defendants Bankeroff and Koutsioukis by purchasing their membership interests in HCRN, thereby creating a known contract expectancy, and that Bankeroff and Koutsioukis intentionally interfered with this expectancy when they refused to accept Plaintiff's payments and ousted Plaintiff. See Dkt. 11 ¶¶ 218-21. But well-established precedent makes clear that "[a]n action for tortious interference with a contract or business expectancy . . . does not lie against parties to the contract"; it may instead only be brought "against those outside the contractual relationship, *i.e.*, strangers to the contract or business expectancy." *Francis Hosp., Inc. v. Read Props., LLC*, 296 Va. 358, 365 (2018); *L-3 Commc'ns Corp. v. Serco, Inc.*, 926 F.3d 85, 91 (4th Cir. 2019). Summary judgment must therefore be granted for Defendants on Count XI of Plaintiff's Amended Complaint.

D. Statutory Conspiracy and Common Law Civil Conspiracy (Counts IX and X)

In Counts IX and X of its Amended Complaint, Plaintiff alleges civil conspiracy pursuant to Va. Code § 18.2-499 and § 18.2-500 against Defendants. Dkt. 11 ¶ 202. A plaintiff bringing

this statutory claim of civil conspiracy must plausibly allege that "two or more persons" "combine[d], associate[d], agree[d], mutually undert[ook] or concert[ed] together for the purpose of . . . willfully and maliciously injuring another in his . . . trade, business or profession . . . " Va. Code § 18.2-499.  There must also be "resulting damage to plaintiff." *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 214 (2014) (quoting *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449 (1984)).  Among other acts, in Count IX of the Amended Complaint Plaintiff alleges that Defendants "conspired to injure [Plaintiff] by ousting it from HCRN and taking its shares in the company without consideration, all the while keeping all the monies paid to date by [Plaintiff] as payment for the purchase of the business and as payment on the four promissory notes for their sole benefit and profit."  Dkt. 11 ¶ 202.

In Count X of the Amended Complaint, Plaintiff asserts that "Defendants Bankeroff and Koutsioukis agreed to unlawfully remove Plaintiff from HCRN and take back the membership interests they had sold to Plaintiff"; that in April of 2018 they "intentionally refused to accept payments for the Notes from HCRN on behalf of Plaintiff"; and that "[o]n August 7, 2018, Defendants intentionally and affirmatively ousted Plaintiff from HCRN and reissued the membership interests in their own names."  Dkt. 11 ¶ 211-13.

Neither of Plaintiff's conspiracy claims withstand the test of summary judgment.  First, no tort claim brought by Plaintiff survives summary judgment, and this Court is unaware of any authority suggesting that a party may maintain an action for civil conspiracy when there is no longer an underlying tort claim.  Indeed, the authority in this circuit leads to the exact opposite conclusion.  *See OpenRisk, LLC, v. Microstrategy Servs. Corp.*, 876 F.3d 518, 529 (4th Cir. 2017) (applying Virginia law and concluding that "[i]f the underlying tort is dismissed for any reason, so, too, must the corresponding conspiracy claim be dismissed.") (citations omitted).

15

What is more, Plaintiff has not identified any factual circumstances sufficient to support its contentions that "Koutsioukis and Bankeroff have conspired with each other to deprive [Plaintiff] from its bargain for purchasing HCRN, that they [] developed a byzantine plan to take over HCRN and that they implemented the plan to deprive Vivos from owning HCRN." Dkt. 73 at 30-31. A party's own conclusory statements will not defeat a properly supported motion for summary judgment, however. *Rountree v. Fairfax Cty. Sch. Bd.*, 933 F.2d 219, 223 (4th Cir. 1991) ("The arguments of counsel, absent any evidence such as sworn affidavits accompanying objections to a motion for summary judgment, fail to meet the evidentiary standard necessary to create a genuine issue of material fact.").

Accordingly, the Court grants summary judgment in Defendants' favor as to Counts IX and X of Plaintiff's Amended Complaint.

### E. Unjust Enrichment and *Quantum Meruit* (Counts XII and XIII)

Counts XII and XIII of Plaintiff's Amended Complaint allege claims for unjust enrichment and *quantum meruit*. To prevail on a claim for quasi-contract, a plaintiff must show: "(1) A benefit conferred on the defendant by the plaintiff; (2) [k]nowledge on the part of the defendant of the conferring of the benefit; and (3) [a]cceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value." *Nossen v. Hoy*, 750 F. Supp. 740, 744-45 (E.D. Va. 1990). Plaintiff asserts that Defendants Bankeroff and Koutsioukis were unfairly enriched "when they accepted [Plaintiff's] purchase price of more than $8.5M" for their Membership Interests in HRCN, Dkt. 11 ¶ 226, "and accepted the monthly payments on the promissory notes between April 2017 and July 2018." *Id.*

Relevant here, Defendants assert that the transactions at issue in this litigation occurred pursuant to three contractual arrangements: the Membership Interest Agreement, the Notes, and

the Pledge Agreement. Plaintiff has not identified any competent evidence in this record to support a finding that the transactions here were *not* governed by the Membership Interest Agreement, the Notes, and the Pledge Agreement. Upon review of the record, the Court makes the following findings. First, these documents spelled out the terms by which Plaintiff acquired HCRN, provided the mechanism by which Plaintiff issued the Notes to Defendants Bankeroff and Koutsioukis, and outlined the conditions permitting former owners to declare a default and attempt to reclaim their Membership Interests. Consequently, a contract governs each of the alleged instances of wrongdoing by Defendants in this matter. This Court has left little doubt that "Virginia law is clear that a plaintiff cannot raise an unjust enrichment claim where an express contract governs the alleged wrongdoing." *Trident Prod. & Servs., LLC v. Canadian Soiless Wholesale, Ltd.*, 859 F. Supp. 2d 771, 781 (E.D. Va. 2012), *aff'd*, 505 F. App'x 242 (4th Cir. 2013). Summary judgment must therefore be entered in Defendants' favor on Plaintiff's unjust enrichment and *quantum meruit* claims.

## F. Discovery Issues

There is some suggestion that additional discovery may be justified in this case, but the Court is without a sufficient basis to rule on this issue. A party wishing to reopen discovery must show good cause for doing so in a proper motion. *See United States v. $17,891.89 in Funds from Union Bank & Tr. Acct. No. 342934201*, No. 3:09-cv-767, 2010 WL 6650101, at *3 (E.D. Va. Dec. 8, 2010). The parties are reminded that any such requests will be considered with respect to the Rule 16 Orders issued in this case, Judge Buchanan's prior rulings on discovery issues, and E.D. Va. Local Civil Rule 26.

IV. CONCLUSION

For the reasons stated above, it is hereby ORDERED that Defendants' Motion for Summary Judgment (Dkt. 68) is GRANTED IN PART and DENIED IN PART. Summary judgment is entered in Defendants' favor as to Counts V, VIII, IX, X, XI, XII, and XIII of the Amended Complaint, and those Counts are hereby DISMISSED. Summary judgment is denied as to Count II of the Amended Complaint and Count IV of the Counterclaim; and it is

FURTHER ORDERED that the parties appear for a Final Pretrial Conference on April 14, 2022 at 10:00 a.m.

The Clerk of the Court is directed to forward a copy of this Memorandum Opinion and Order to counsel of record, and to add the above-mentioned Final Pretrial Conference to the Court's docket.

It is SO ORDERED.

Alexandria, Virginia
March 31, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge